PHOENIX WOMEN'S HEALTH
CENTER, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 28, 1997.

Decided May 14, 1997.

Anthony J. Urban, Pottsville, for petitioner.

Clifford F. Blaze, Deputy Chief Counsel, Harrisburg, for respondent.

Before PELLEGRINI and LEADBETTER, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Phoenix Women's Health Center (Employer) petitions for review of an order of the Unemployment Compensation Board of Review (Board) that reversed the decision of the referee and granted unemployment compensation benefits to Karyl L. Moser (Moser).

The facts, as found by the Board[1], are not in dispute and are summarized as follows. Moser, who was employed as an office manager and licensed practical nurse at a rate of $10.65 an hour, last worked for the Employer on June 21, 1996. Moser sustained a non work-related injury[2] for which she was hospitalized on June 23, 1996. Moser reported off from work on June 24, 1996 and was granted a medical leave of absence. Moser received a medical release to perform "limited work duties"[3] and reported to the Employer on July 22, 1996 to discuss returning to work. Moser was informed at that time that, since the Employer would have to hire another person for the duties which she was physically unable to perform, it could not afford to pay her former wage but instead offered to pay her a wage of $7.00 an hour while her job duties were restricted. Moser told the Employer that she could not adjust her wages to that extent and instead offered to work only four hours a day and collect partial unemployment benefits; the Employer rejected Moser's counter offer. Moser understood that, in order to continue her employment, she would have to take a $3.65 per hour reduction in wages. Moser informed the Employer on July 26, 1996 that she needed to collect her regular salary and would not work for $7.00 an hour and quit her employment. The lone reason for Moser's decision to quit was the reduction in her wages.

Moser applied for unemployment compensation benefits which were granted by the local job center. The Employer appealed to the referee who, after conducting a hearing on the matter, reversed and disallowed benefits under Section 402(b) of the Unemployment Compensation Law[4] (Law). Moser

---

1. In unemployment compensation cases, the Board is the ultimate finder of fact. *Ford v. Unemployment Compensation Board of Review,* 95 Pa.Cmwlth. 104, 504 A.2d 427 (1986), *petition for allowance of appeal denied,* 514 Pa. 621, 521 A.2d 935 (1987).

2. Moser had two herniated discs in her back. (R.R. 6a).

3. Moser was restricted to desk work only and could not do any bending, lifting, squatting, kneeling, repeated standing or walking. (Board's Finding of Fact No. 6).

4. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(b), provides, in pertinent part, as follows:

An employe shall be ineligible for compensation for any week—

. . . .

(b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, . . . .

appealed to the Board which reversed the decision of the referee and granted benefits.

■ The Board concluded that Moser was "*effectively demoted* from a wage rate of $10.65 per hour to $7.00 per hour because of her physical restrictions." (Emphasis added). The Board further concluded that, because the reduction in her wages was substantial [5], Moser had "good cause" to quit her job. In support thereof, the Board relied on *Allegheny Valley School v. Unemployment Compensation Board of Review,* 666 A.2d 1144 (Pa.Cmwlth.1995), *petition for allowance of appeal granted,* 544 Pa. 613, 674 A.2d 1075 (1996), wherein this Court held that if the demotion substantially reduces the claimant's pay, or if the claimant's job responsibilities change significantly because of the demotion, then the claimant will be deemed to have good cause for voluntarily terminating his employment and shall be eligible for benefits as long as no conduct amounting to willful misconduct is involved. 666 A.2d at 1147.[6]

The Employer argues that the Board erred in interpreting this case to be one in which the claimant terminated her employment in lieu of accepting a "demotion." We agree and therefore conclude that the Board's reliance on *Allegheny Valley School* is misplaced. In *Allegheny Valley School,* the claimant was unilaterally demoted by the employer due to unsatisfactory performance of his job duties. In the instant matter, Moser was not demoted by the Employer but rather was unable to perform her normal duties as a result of her non work-related injury.

■ The issue raised herein by the Employer is whether the Board erred in concluding that Moser had "good cause," i.e. cause of a compelling and necessitous nature, for voluntarily terminating her employment.[7] Cause of a compelling and necessitous nature is that cause which results from overpowering circumstances which produce pressure, both real and substantial, to terminate one's employment which would compel a reasonable person to act in the same manner. *Quinn, Gent, Buseck and Leemhuis, Inc. v. Unemployment Compensation Board of Review,* 147 Pa.Cmwlth. 141, 606 A.2d 1300 (1992).[8]

■ Section 402(b) of the Law provides, in pertinent part, that "a voluntary leaving work because of a disability if the employer is able to provide other suitable work, shall be deemed not a cause of a compelling and necessitous nature...." 43 P.S. § 802(b). In order for an employee, who can no longer perform her regular duties due to a physical condition, to remain eligible for benefits, she must: 1) communicate her medical condition to the employer; 2) explain her inability to perform her regularly assigned duties; and 3) to be available, where a reasonable accommodation is made by the employer, for work

---

5. Where the reduction in wages is the sole reason given for voluntary termination of employment, there must be a substantial reduction in wages and not just a mere dissatisfaction with wages must be proven for the claimant to establish grounds for recovery of benefits. *Griffith Chevrolet–Olds, Inc., v. Unemployment Compensation Board of Review,* 142 Pa.Cmwlth. 242, 597 A.2d 215 (1991). There is, however, no talismatic percentage figure that separates a substantial reduction from one that is not; each case must be measured by its own circumstances. *Id.* The proposed new wages herein were 34.27 percent lower than Moser's former wages.

6. In *Allegheny Valley School,* this Court noted that the Board is to consider whether the claimant performed to the best of his or her ability or had not engaged in conduct amounting to willful misconduct, as well as the effects of the demotion upon the claimant's compensation and job responsibilities. 666 A.2d at 1147, *citing Old Forge Bank v. Unemployment Compensation*

*Board of Review,* 666 A.2d 761 (Pa.Cmwlth. 1995). *Id.*

7. There is no dispute that Moser voluntarily quit her employment. Whether voluntary termination was for cause of necessitous and compelling nature is a legal conclusion subject to appellate review which is limited to determining whether constitutional rights have been violated, an error of law has been committed or whether necessary facts are supported by substantial evidence. *Eby v. Unemployment Compensation Board of Review,* 157 Pa.Cmwlth. 10, 629 A.2d 176 (1993); *Baertl v. Unemployment Compensation Board of Review,* 156 Pa.Cmwlth. 428, 627 A.2d 1232 (1993).

8. The claimant bears the burden of proving that compelling and necessitous reasons motivated the decision to voluntarily leave the employment. *Accu–Weather, Inc. v. Unemployment Compensation Board of Review,* 160 Pa.Cmwlth. 307, 634 A.2d 818 (1993).

which is not inimical to her health. *See Genetin v. Unemployment Compensation Board of Review,* 499 Pa. 125, 451 A.2d 1353 (1982)[9]; *General Building Services, Inc., v. Unemployment Compensation Board of Review,* 140 Pa.Cmwlth. 100, 591 A.2d 774 (1991); *Dornblum v. Unemployment Compensation Board of Review,* 77 Pa.Cmwlth. 547, 466 A.2d 747 (1983). There is no dispute that the Employer was aware that the health problems of Moser rendered her unable to perform the job for which she was originally hired. *Genetin* places the burden on an employer, who is cognizant of an employee's medical problem, to provide "suitable work."[10] 499 Pa. at 131–132, 451 A.2d at 1356. We must, therefore, determine whether, as a matter of law, the Employer made a reasonable accommodation and provided "suitable work" to Moser.[11]

■ There is no dispute that Moser, by reason of her non work-related injury, could not perform her pre-injury duties and that the proposed job was within her physical restrictions. The Board found, and Moser does not dispute, that the only reason she did not accept the proffered job was because of the reduction in salary. The work made available to Moser was at a wage of $7.00 an hour; Moser had previously earned $10.65 an hour for work which she was now unable to perform. Previous earnings, however, is

only one of many factors to be considered; even substantial disparity between the claimant's previous wages and the wage of proffered position does not itself render work unsuitable. *See* Section 402(a) of the Law, 43 P.S. § 802(a) which governs ineligibility for failure to apply for or accept suitable work; *Rising v. Unemployment Compensation Board of Review,* 153 Pa.Cmwlth. 481, 621 A.2d 1152 (1993) (where the only real difference between positions was compensation, employment as a truck driver was suitable work for a claimant who was by trade a heavy equipment operator); *Eichman v. Unemployment Compensation Board of Review,* 49 Pa.Cmwlth. 21, 409 A.2d 1389 (1980); *Unemployment Compensation Board of Review v. Kozinsky,* 18 Pa.Cmwlth. 286, 335 A.2d 843 (1975). Clearly, the Employer met its burden under *Genetin* and Section 4(t) of the Law, 43 P.S. § 753(t) to establish that it had made available to Moser suitable work which she declined to avail herself. Thus, the Board erred in concluding that Moser was not ineligible for benefits under Section 402(b) of the Law, 43 P.S. § 802(b).

Accordingly, the order of the Board will be reversed and benefits will be denied.

### *ORDER*

AND NOW, this 14th day of May, 1997, the order of the Unemployment Compensa-

---

**9.** "[I]t was not the intent of the Act to provide health and disability benefits for an ill employee who is not physically able and available for participation in the work force...." (Citations omitted). *Genetin,* 499 Pa. at 128, 451 A.2d at 1353. The Law is designed to relieve workers who become unemployed, through no fault of their own, of hardship flowing from loss of employment. *Gilman v. Unemployment Compensation Board of Review,* 28 Pa.Cmwlth. 630, 369 A.2d 895 (1977).

**10.** Section 4(t) of the Law defines "suitable work" as follows:

all work which the employe is capable of performing. In determining whether or not any work is suitable for an individual, the department shall consider the degree of risk involved to his health, safety and morals, his physical fitness, prior training and experience, and the distance of the available work from his residence. The department shall also consider among other factors the length of time he has been unemployed and the reasons therefor, the prospect of obtaining local work in his custom-

ary occupation, his previous earnings, the prevailing condition of the labor market generally and particularly in his usual trade or occupation, prevailing wage rates in his usual trade or occupation, and the permanency of his residence. However, notwithstanding any other provision of this subsection no work shall be deemed suitable in which (1) the position offered is vacant, due directly to a strike, lockout, or other labor dispute, or (2) the remuneration, hours or other conditions of the work offered are substantially less favorable to the employee that those prevailing for similar work in the locality, or (3) as a condition of being employed, the employe would be required to join a company union, or to resign from, or refrain from joining, any bona fide labor organization.

43 P.S. § 753(t).

**11.** Issues of suitability of work are questions of law subject to review by this Court. *See Gettig Engineering v. Unemployment Compensation Board of Review,* 81 Pa.Cmwlth. 416, 473 A.2d 749 (1984).

tion Review Board, dated November 19, 1996, reversing the Referee is reversed and unemployment compensation benefits are denied.

